OPINION
{¶ 1} Defendant-appellant, Hanni Rashad Mahmood, appeals from a Carroll County Probate Court judgment granting the motion of plaintiff-appellee, Paula Roberts, to change the name of the parties' son.
 {¶ 2} The parties share one son who was born on June 26, 2006. The parties were never married. The name given to the child on his birth certificate is "Amin Hanni Mahmood."
 {¶ 3} Upon learning that appellee was pregnant, the parties took up residence together in Mahoning County, Ohio. They later moved to Raleigh, North Carolina when appellant obtained employment there. In August 2007, appellee and the child came to Carroll County, Ohio for a wedding. They never returned to North Carolina. They currently reside in Carroll County with appellee's parents.
 {¶ 4} On December 17, 2007, appellee filed an application for change of name of a minor. She requested that the court change the name of the parties' son from "Amin Hanni Mahmood" to "Isaac Cole Roberts." In her application, appellee asserted that appellant had no contact with her or their son for over a year, had paid no child support, and she was the sole custodial parent. At the time, the parties' son was one-and-a-half years old.
 {¶ 5} The court held a hearing on appellee's application where it heard testimony from both parties. It then concluded that it was in the child's best interest that it grant the proposed name change.
 {¶ 6} Appellant filed a timely notice of appeal on May 9, 2008.
 {¶ 7} Appellant raises a single assignment of error that states:
 {¶ 8} "WHETHER THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN GRANTING THE REQUESTED NAME CHANGE."
 {¶ 9} Appellant argues that the trial court's decision was not supported by the evidence and notes that the court failed to provide any support for its decision. He contends that appellee did not demonstrate that it was in the child's best interest for the court to change his name. Instead, he asserts that appellee was simply motivated by the fact that her relationship with him had ended. *Page 2 
 {¶ 10} Appellant points to the following facts for support. After moving to North Carolina, appellant provided financial support for appellee and their son so that appellee did not have to work. He provided health care for the child until December 2007. He was current in his child support. He repeatedly attempted to visit his son. He attempted to care for appellee and their son even though it caused problems for him with his family.
 {¶ 11} An appellate court will only reverse a trial court's decision on a name change if the trial court abused its discretion. In re Changeof Name of Barker, 155 Ohio App.3d 673, 2003-Ohio-7016, ¶ 9. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's judgment was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
 {¶ 12} R.C. 2712.01(B) provides that either parent may make an application for a name change on behalf of a minor child. Pursuant to R.C. 2712.01(A), the court must determine whether the facts set forth in the application show reasonable and proper cause for changing the name of the applicant.
 {¶ 13} When deciding whether to permit such a name change under R.C. 2712.01, the trial court must consider the best interest of the child in determining whether reasonable and proper cause has been established.In re Willhite (1999), 85 Ohio St.3d 28, 706 N.E.2d 778, at paragraph one of the syllabus. In determining whether a name change is in the child's best interest, the trial court must consider eight factors. Id. at paragraph two of the syllabus. Those factors are: (1) The effect of the change on the preservation and development of the child's relationship with each parent; (2) The identification of the child as part of a family unit; (3) The length of time that the child has used a surname; (4) The preference of the child if the child is of sufficient maturity to express a meaningful preference; (5) Whether the child's surname is different from the surname of the child's residential parent; (6) The embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent's surname; (7) Parental failure to *Page 3 
maintain contact with and support the child; and (8) Any other factor relevant to the child's best interest. Id.
 {¶ 14} Thus, we must consider the evidence presented in light of the above factors. Appellant and appellee were the only witnesses to testify.
 {¶ 15} Appellee's testimony was as follows. The parties' child was born out of wedlock. (Tr. 5). At the time, she and appellee were living together in Ohio. (Tr. 5). In March 2007, the three moved to Raleigh, North Carolina. (Tr. 5).
 {¶ 16} According to appellee, after the parties moved to Raleigh, appellant had no relationship with their child. (Tr. 6). Appellee stated that appellant drank a lot and spent most of his free time gambling on the computer. (Tr. 6). Appellee testified that appellant never spent time bonding with their child. (Tr. 6). She stated that she was the child's primary caregiver. (Tr. 6).
 {¶ 17} Appellee testified that she and the child currently reside with her parents in Salineville, Ohio. (Tr. 6). She testified that her parents care for the child while she is at work and that he is very close to them. (Tr. 7). Appellee further stated that her brothers regularly visit the child and he is close with them also. (Tr. 7). All of these people have the last name of Roberts, including appellee. (Tr. 7). Appellee stated that they call the child "Isaac" and that this is the name to which he responds. (Tr. 7). Appellee further testified that she planned on raising the child in Carroll County, Ohio with her family. (Tr. 8).
 {¶ 18} On the other hand, appellee stated that the child has never met his paternal grandmother because she does not want to see him. (Tr. 6). She stated that appellant's mother did not speak to appellant for ten months after the child was born because she was upset that he had a baby with appellee. (Tr. 7). Appellee stated that after the baby was born, appellant chose to stay with her and their son even though this meant that his mother would not speak with him. (Tr. 16).
 {¶ 19} As to child support, appellee stated that appellant's monthly obligation is $50, but that he only pays it every three months when his driver's license gets *Page 4 
suspended. (Tr. 9). And she submitted an exhibit showing that appellant cancelled the child's health insurance on December 14, 2007. (Tr. 9; Ex. A).
 {¶ 20} Appellee also testified about why she left Raleigh. She stated that she originally took the child and came home to Ohio for a friend's wedding. (Tr. 10). In the meantime, appellant's mother contacted him from Palestine and told him that she was coming to see him. (Tr. 10). Appellee testified that appellant chose his mother over her, so she never returned to Raleigh. (Tr. 10).
 {¶ 21} Appellee further stated that when the child was only four weeks old, appellant threatened to take him to Palestine where appellee would never see him again. (Tr. 11).
 {¶ 22} As to visitation, appellee stated that she has told appellant he is welcome to visit their son at her parents' house. (Tr. 11; Ex. B). However, she has also told him that he may not leave with their son because she does not trust him. (Tr. 11). In the past nine months, appellant only visited the child once for 45 minutes. (Tr. 5). She further stated that to her knowledge, appellant had never filed for visitation. (Tr. 12).
 {¶ 23} Finally, appellee testified that appellant has used her name and social security number to open on-line gambling accounts and obtain prescription drugs. (Tr. 13).
 {¶ 24} Appellant then testified on his behalf. Appellant stated that when he learned that appellee was pregnant, he had to make a choice between appellee and the baby or his mother. (Tr. 27). He stated that his mother did not approve of his having a baby with a non-Arabic woman. (Tr. 26-27). He chose to support appellee and their son and did not speak with his mother for ten months. (Tr. 27).
 {¶ 25} Appellant then gave the same version of events as appellee as far as the parties moving in together and later moving to North Carolina. (Tr. 28-30).
 {¶ 26} Appellant also testified that appellee has told him that he could see their son at her parents' house but that he could not take the child with him. (Tr. 31-32). *Page 5 
 {¶ 27} Additionally, appellant refuted appellee's testimony that he spent all of his free time using the computer. (Tr. 33-34). He stated that when appellee and their child lived with him he changed diapers, fed his son, and took him swimming. (Tr. 34).
 {¶ 28} Appellant next testified that he and appellee jointly decided on their son's name. (Tr. 35). He stated that it is the Arabic tradition that a son carries his father's name. (Tr. 35).
 {¶ 29} Given this evidence, we cannot conclude that the trial court abused its discretion in granting the requested name change. The child has not had a relationship with appellant for at least half of his short life. The child resides with his mother and maternal grandparents who all share the last name Roberts. He is the only one in his home with a different name. While the child has used the name Mahmood for his entire life, he is only two years old so the duration of time is not very long. And finally, appellant has been delinquent in his child support on more than one occasion, has eliminated the child from his health care, and has not made any meaningful effort to visit with the child. These factors all support the trial court's decision to grant the name change.
 {¶ 30} Appellant compares this case to that of In re Willoughby, 11th Dist. No. 2003-L-050, 2004-Ohio-2079. In Willoughby, three children, through their mother, filed an application to change their surname from that of their father to that of their mother. The trial court found that a name change was not in the children's best interest and denied the application. The court of appeals affirmed.
 {¶ 31} The court found it could not conclude that the trial court abused its discretion based on the following application of theWillhite factors: a name change would destroy an already strained relationship between the children and their father; the name change only became an issue after the father attempted to deal with disrespectful behavior on the part of the children; the children have not used their mother's maiden name for a significant length of time but they did testify that they desired the name change and all were sufficiently mature to do so; the children's *Page 6 
surname is different from that of their residential parent but this only occurred because the mother reverted to her maiden name after the divorce; while the children testified they were teased because of their last name they could point to no specific instances of such teasing and there was no evidence that the children suffered embarrassment, discomfort, or inconvenience because they have a different surname than their residential parent; and the record demonstrated that the father desired a relationship with his children but that the mother has attempted to poison the relationship. Id. at ¶ 14.
 {¶ 32} This case, however, is distinguishable fromWilloughby. Firstly, and most importantly, in the case sub judice the trial court found that it was in the child's best interest to change his name while in Willoughby the trial court found it was not in the children's best interest. This difference is important because of the standard of review we must apply. Even if this court might reach a different conclusion on the name change issue, we cannot reverse the trial court's decision unless it was unreasonable, arbitrary, or unconscionable. Our standard of review is an abuse of discretion.
 {¶ 33} Secondly, several of the factors the court relied on inWilloughby are not present here. For instance, in Willoughby the children's surname was only different from their residential parent's surname because the mother changed her name to her maiden name after the parties divorced. In the present case however, the parties were never married and appellee's name has always been Roberts, which is different from the child's name. Additionally, in Willoughby, the court found that the father desired a relationship with his children but that the mother had attempted to poison the relationship. Here however, there was no evidence that appellee attempted to poison a relationship between appellant and their child. In fact, both parties testified that appellee told appellant he could visit the child any time he wanted to at her parents' house. But appellant has not taken advantage of this invitation. Thus, the case at bar is not analogous toWilloughby as appellant suggests. *Page 7 
 {¶ 34} Because the trial court did not abuse its discretion in granting the name change, appellant's sole assignment of error is without merit.
 {¶ 35} For the reasons stated above, the trial court's judgment is hereby affirmed.
Vukovich, P.J., concurs. Waite, J., concurs. *Page 1